CYNTHIA E. RICHMAN (D.C. Bar No. 492089; pro hac vice forthcoming)
   crichman@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, DC 20036-5306
Telephone: 202.955.8500
Facsimile: 202.467.0539

DANIEL G. SWANSON (SBN 116556)
   dswanson@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071
Telephone: 213.229.7000
Facsimile: 213.229.7520

*Attorneys for Defendant Apple Inc.*

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| KYLE T. WHITESIDE, individually and on behalf of all others similarly situated,<br><br>      Plaintiff,<br><br>   v.<br><br>APPLE INC.,<br><br>      Defendant. | CASE NO. 5:24-cv-2699<br><br>**NOTICE OF REMOVAL**<br><br>Removal from the Superior Court of the State of California, Santa Clara County, Case No. 24-cv-434085<br><br>Action Filed:   March 28, 2024<br>Trial Date:     None Set |

**TABLE OF CONTENTS**

Page

I. INTRODUCTION ................................................................................................................. 1

II. BACKGROUND ................................................................................................................... 2

III. TIMELINESS OF REMOVAL ............................................................................................. 5

IV. THIS COURT HAS FEDERAL QUESTION JURISDICTION ........................................... 5

    A. Plaintiff's UCL Claim Necessarily Raises Federal Questions ..................................... 6

    B. The Federal Questions Are Actually Disputed ............................................................ 9

    C. The Federal Questions Are Substantial ...................................................................... 10

    D. The Federal Questions Can Be Resolved in Federal Court Without Disrupting the Federal-State Balance Approved by Congress ........................................ 10

V. REMOVAL TO THIS COURT IS PROPER ...................................................................... 11

# TABLE OF AUTHORITIES

Page

## Cases

*Am. Mitac Corp. v. Fed. Ins. Co.*,
  1994 WL 110384 (N.D. Cal. Mar. 29, 1994) ................................................................. 6

*ARCO Env't Remediation, L.L.C. v. Dep't of Health & Env't Quality of Montana*,
  213 F.3d 1108 (9th Cir. 2000) .................................................................................... 1

*Asahi Kasei Pharma Corp. v. CoTherix, Inc.*,
  204 Cal. App. 4th 1 (2012) ......................................................................................... 8

*Beverage v. Apple, Inc.*,
  No. H050526, 2024 WL 1794410 (Cal. Ct. App. Apr. 25, 2024) ............................ 7, 8

*California Retail Liquor Dealers, Ass'n v. Midcal Aluminum, Inc.*,
  445 U.S. 97 (1980) .................................................................................................... 10

*Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*,
  20 Cal. 4th 163 (1999) ............................................................................................... 8

*Cent. Valley Med. Grp., Inc. v. Indep. Physician Assocs. Med. Grp., Inc.*,
  2019 WL 2491328 (E.D. Cal. June 14, 2019) ......................................................... 2, 8

*County of Santa Clara v. Astra USA, Inc.*,
  401 F. Supp. 2d 1022 (N.D. Cal. 2005) .................................................................... 11

*Dimidowich v. Bell & Howell*,
  803 F.2d 1473 (9th Cir. 1986) ............................................................................ 2, 8, 9

*Easton v. Crossland Mortg. Corp.*,
  114 F.3d 979 (9th Cir. 1997) ..................................................................................... 5

*Eichman v. Fotomat Corp.*,
  759 F.2d 1434 (9th Cir. 1985) .................................................................................. 10

*Federated Dep't Stores, Inc. v. Moitie*,
  452 U.S. 394 (1981) ................................................................................................... 9

*Flagship Theaters of Palm Desert, LLC v. Century Theaters, Inc.*,
  198 Cal. App. 4th 1366 (Cal. Ct. App. 2011) ......................................................... 2, 7

*Franchise Tax Bd. of State of Cal. v. Constr. Laborers Vacation Tr. for S. California*,
  463 U.S. 1 (1983) ....................................................................................................... 2

*Grable & Sons Metal Prod., Inc. v. Darue Eng'g & Mfg.*,
  545 U.S. 308 (2005) ................................................................................................ 1, 6

*Gunn v. Minton*,
  568 U.S. 251 (2013) ............................................................................................. 5, 10

# TABLE OF AUTHORITIES
(continued)

Page

*Hilton v. Apple Inc.*,
  2014 WL 10435005 (C.D. Cal. Apr. 18, 2014) ...................................................................8

*Marrese v. Am. Acad. of Orthopaedic Surgeons*,
  470 U.S. 373 (1985) ..........................................................................................................10

*Miller v. Hedlund*,
  813 F.2d 1344 (9th Cir. 1987) ..........................................................................................10

*Nat'l Credit Reporting Ass'n, Inc. v. Experian Info. Sols., Inc.*,
  2004 WL 1888769 (N.D. Cal. July 21, 2004) .........................................................2, 7, 8, 9

*In re: Nat'l Football Leagues Sunday Ticket Antitrust Litig.*,
  2016 WL 1192642 (C.D. Cal. Mar. 28, 2016) ...........................................2, 8, 9, 10, 11

*Rivet v. Regions Bank of Louisiana*,
  522 U.S. 470 (1998) ............................................................................................................6

*Rosenman v. Facebook Inc.*,
  2021 WL 3829549 (N.D. Cal. Aug. 27, 2021) .............................................2, 8, 10, 11

*Sparta Surgical Corp. v. Nat'l Ass'n of Sec. Dealers, Inc.*,
  159 F.3d 1209 (9th Cir. 1998) .................................................................................2, 5, 9

**Statutes**

15 U.S.C. § 4 ...............................................................................................................................10

15 U.S.C. § 15 ......................................................................................................................10, 11

28 U.S.C. § 84 ............................................................................................................................11

28 U.S.C. § 1331 .....................................................................................................................5, 11

28 U.S.C. § 1367 ........................................................................................................................11

28 U.S.C. § 1441 ..........................................................................................................................5

28 U.S.C. § 1446 ..........................................................................................................................5

Cal. Bus. & Prof. Code § 16700 .................................................................................................6

Cal. Bus. & Prof. Code § 16720 .................................................................................................6

Cal. Bus. & Prof. Code § 17200 .............................................................................................6, 7

**Rules**

N.D. Cal. L.R. 3-2 .....................................................................................................................11

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD**:

**PLEASE TAKE NOTICE** that Defendant Apple Inc. hereby removes to this Court the state court action filed by Kyle T. Whiteside on March 28, 2024 in Santa Clara Superior Court, State of California, Case No. 24-cv-434085. Removal is proper under 28 U.S.C. §§ 1331, 1441, 1446.

## I. INTRODUCTION

This case can and should be litigated in federal court. On March 21, 2024, the Department of Justice and 16 states—including California—sued Apple in the United States District Court for the District of New Jersey under federal and state antitrust laws. Dozens of private class actions have been filed in that lawsuit's wake, each asserting duplicative claims, on behalf of duplicative classes, based on duplicative alleged facts—oftentimes parroting the Government's allegations verbatim. All but one of those cases were filed in federal courts across the country. This is that other case: Although it too clones the Government's allegations—likewise seeking to hold Apple liable for alleged monopolization of a "smartphone" (or, in the alternative, "performance smartphone") market—Plaintiff sued in state court and tried to couch his claims under state law. But federal jurisdiction is not so easily avoided. Under the "artful pleading" doctrine, federal question jurisdiction lies "where the right to relief [on a state law claim] depends on the resolution of a substantial, disputed federal question." *ARCO Env't Remediation, L.L.C. v. Dep't of Health & Env't Quality of Montana*, 213 F.3d 1108, 1114 (9th Cir. 2000); *Grable & Sons Metal Prod., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 312 (2005). That is the case here.

The crux of this case, like the Government's, is that Apple engaged in alleged "monopolistic conduct in the performance smartphone and smartphone markets" aimed at "suppress[ing] technologies that would have increased competition" so that Apple could "unlawfully maintain[] its monopoly power" in those markets. Declaration of Daniel G. Swanson in Support of Defendant Apple Inc.'s Notice of Removal ("Swanson Decl."), Ex. C ("Compl.") ¶¶ 1, 11, p. 21 (capitalization omitted); *see also* Appendix A–B.[1] But California antitrust law does not proscribe unilateral, monopolistic conduct;

---

[1] Appendix A lists each allegation from Plaintiff's Complaint that is quoted in this Notice of Removal and provides citations to where that quote appears in identical or nearly identical form in other pending federal cases brought against Apple. Appendix B identifies all identical allegations between Plaintiff's Complaint and the Government's.

that is the province of federal law—specifically, Section 2 of the Sherman Act. *Dimidowich v. Bell & Howell*, 803 F.2d 1473, 1478 (9th Cir. 1986); *Flagship Theaters of Palm Desert, LLC v. Century Theaters, Inc.*, 198 Cal. App. 4th 1366, 1386 (Cal. Ct. App. 2011). Because Apple's alleged "monopoly maintenance" (Compl. ¶ 74) is thus "only actionable [if at all] under Section 2 of the Sherman Act," Plaintiff's unfair competition claim "necessarily raise[s] federal issues." *In re: Nat'l Football Leagues Sunday Ticket Antitrust Litig.*, 2016 WL 1192642, at *5 (C.D. Cal. Mar. 28, 2016) ("*Sunday Ticket*"). Accordingly, Plaintiff's claims implicate substantial, disputed federal questions and give rise to jurisdiction under 28 U.S.C. § 1331. Indeed, many courts have rejected attempts, like Plaintiff's, to "cast[] in state law terms a claim that can be made only under federal law" and have recognized that such cases, like this one, should be heard in federal court. *Sparta Surgical Corp. v. Nat'l Ass'n of Sec. Dealers, Inc.*, 159 F.3d 1209, 1212 (9th Cir. 1998); *see, e.g.*, *Sunday Ticket*, 2016 WL 1192642, at *5–6; *Rosenman v. Facebook Inc.*, 2021 WL 3829549, at *7 (N.D. Cal. Aug. 27, 2021); *Cent. Valley Med. Grp., Inc. v. Indep. Physician Assocs. Med. Grp., Inc.*, 2019 WL 2491328, at *3 (E.D. Cal. June 14, 2019); *Nat'l Credit Reporting Ass'n, Inc. v. Experian Info. Sols., Inc.*, 2004 WL 1888769, at *3 (N.D. Cal. July 21, 2004) ("*National Credit*"). This case hinges on whether Apple's alleged conduct violates the federal Sherman Act. It therefore belongs in federal court.

## II.   BACKGROUND

1. Plaintiff Kyle T. Whiteside filed this putative class action in Santa Clara Superior Court on March 28, 2024. *See* Swanson Decl. ¶¶ 2–4, Exs. A–C. Plaintiff alleges that he is a resident of San Diego, California and that he purchased a "new iPhone 13 in approximately July 2021" from Apple in California. Compl. ¶ 19. Plaintiff sues on behalf of a putative class of consumers who claim to "have overpaid for iPhones they purchased from Apple, missed out on the innovation and improved user experiences that competition would have made possible, and face ongoing harm unless th[e] Court enjoins Apple's monopolistic conduct in the performance smartphone and smartphone markets." *Id.* ¶ 1.[2]

---

[2] Apple disputes Plaintiff's allegations. They are set forth here because jurisdiction is determined by reference to the allegations in the complaint. *See Franchise Tax Bd. of State of Cal. v. Constr. Laborers Vacation Tr. for S. California*, 463 U.S. 1, 9–14 (1983).

2.  Defendant Apple Inc. was served on April 4, 2024. Swanson Decl., Ex. E. Apple is a technology company that offers a suite of products and services, including the iPhone. Apple is headquartered in Cupertino, California. Compl. ¶ 20. Apple is the only defendant in this action.

3.  Plaintiff alleges that "Apple protects its monopoly power in smartphones and performance smartphones by using its control over app distribution and app creation to suppress or delay apps, innovations, and technologies that would reduce user switching costs or simply allow users to discover, purchase, and use their own apps and content without having to rely on Apple." *Id.* ¶ 144. This so-called "monopoly maintenance" is exemplified, according to Plaintiff, by how Apple has supposedly "cho[sen] to make its products worse for consumers" by "delaying, degrading, or outright blocking technologies that would increase competition in the smartphone markets." *Id.* ¶¶ 9, 11, 74. In particular, Plaintiff alleges that Apple has "denied its users access" to "super apps"; "blocked cloud gaming apps"; "undermine[d] cross-platform messaging"; "degrade[d] the functionality of third-party cross-platform smartwatches"; and "restrict[ed] cross-platform digital wallets on the iPhone." *Id.* ¶¶ 75, 87, 97, 117, p. 35. Taken together, Plaintiff alleges that "[e]ach step in Apple's course of conduct" has "built and reinforced [a] moat around [Apple's] smartphone monopoly" and has had the "cumulative effect of . . . maintain[ing] and entrench[ing] [that] monopoly." *Id.* ¶ 73. Plaintiff does not allege that Apple engaged in a combination or agreement to restrain trade.

4.  Many of Plaintiff's allegations are drawn verbatim from the Government's federal complaint, which alleges violations of Section 2 of the Sherman Act (and violations of New Jersey and Wisconsin antitrust law) against Apple. *See* Request for Judicial Notice ("RJN"), Ex. 1 ("DOJ Compl.") ¶¶ 199–231; Appendix A–B. For example, Plaintiff and the Government make *word-for-word identical* allegations concerning Apple's alleged conduct, the relevant market, the effects of Apple's conduct, and the risk of future harm:

   a. Alleged Conduct:
   - "[T]o protect its smartphone monopoly—and the extraordinary profits that monopoly generates—Apple repeatedly chooses to make its products worse for consumers to prevent competition from emerging." Compl. ¶ 11; DOJ Compl. ¶ 10.
   - "Each step in Apple's course of conduct built and reinforced the moat around its smartphone monopoly. The cumulative effect of this course of conduct has been to maintain and entrench Apple's smartphone monopoly at the expense of the users, developers, and other third parties

who helped make the iPhone what it is today." Compl. ¶ 73; DOJ Compl. ¶ 58.

b. Alleged Market Definition:

- "Apple has monopoly power in the smartphone and performance smartphone markets because it has the power to control prices or exclude competition in each of them." Compl. ¶ 200; DOJ Compl. ¶ 180.
- "All smartphones compete against each other in a broad relevant market. But industry participants, including Apple, assess competition among smartphones in narrower markets that are best understood as submarkets of the larger all-smartphone market." Compl. ¶ 186; DOJ Compl. ¶ 164.

c. Alleged Effects:

- "With the benefit of less competition, Apple extracts extraordinary profits and regulates innovation to serve its interests. This leaves all smartphone users worse off, with fewer choices, higher prices and fees, lower quality smartphones, apps, and accessories, and less innovation from Apple and others. Left unchallenged, Apple will continue to use and strengthen its smartphone monopoly to dictate how companies can create and distribute apps in the future so that they cannot threaten Apple's smartphone monopolies." Compl. ¶ 144; DOJ Compl. ¶ 126.
- "Apple's conduct has resulted in less choice for smartphone users. Today, only two companies (Google and Samsung) remain as meaningful competitors to Apple in the premium smartphone market. Even when users consider these alternatives, Apple's conduct has increased the technical, behavioral, monetary, and other costs of switching from an iPhone to an alternative smartphone. This undermines competition and entrenches Apple's monopoly power." Compl. ¶¶ 145–46 (paragraph break omitted); DOJ Compl. ¶¶ 127–28 (paragraph break omitted).

d. Alleged Risk of Future Harm:

- "Apple may use its smartphone monopoly playbook to acquire or maintain power over next-frontier devices and technologies." Compl. ¶ 156; DOJ Compl. ¶ 136.
- "Finally, Apple's monopolization of smartphone markets gives it tremendous power over the lives of millions of Americans. Today, Apple uses that power to undermine rival smartphones, suppress innovative technologies, and stymie consumer choice. Tomorrow, Apple may use its power to force its own users (and their data) to become its next profitable product." Compl. ¶ 160; DOJ Compl. ¶ 140.

5.  Plaintiff's allegations also mirror those in several putative class actions filed by private plaintiffs in federal court. *See* RJN, Exs. 2–29. Indeed, like the Government's case, Plaintiff's allegations are largely identical to the other private class actions, *all* of which have been brought in federal court and base their claims on Apple's alleged unilateral, monopolistic conduct. *See id.*; Appendix A. By way of example, the allegations recited above are asserted in nearly all of the private actions. Appendix A. Moreover, like Plaintiff, many of the follow-on actions already pending in federal

court assert claims under California's Unfair Competition Law (in addition to Section 2 of the Sherman Act) predicated on Apple's alleged unilateral, monopolistic conduct. *See* RJN Exs. 5, 8, 12, 14, 18–22.

6. The principal differences between Plaintiff's Complaint and the other private actions are the changes Plaintiff made to try to avoid federal jurisdiction. First, Plaintiff limited his putative class to "citizens of the State of California." Compl. ¶ 212. Second, Plaintiff attempted to state claims only under the California Cartwright Act, Unfair Competition law, and common law (*id.* ¶¶ 220–35)— rather than explicitly assert claims under Section 2 of the Sherman Act as the Government and federal private actions do.[3]

7. Plaintiff seeks "full treble damages" as well as an order "enjoin[ing] Apple's monopolistic conduct in the performance smartphone and smartphone markets." *Id.* ¶¶ 1, 15.

### III.   TIMELINESS OF REMOVAL

8. This Notice of Removal is timely. Plaintiff filed this action on March 28, 2024, and Apple was served on April 4, 2024. *See* Swanson Decl. ¶¶ 4, 6 & Exs. C, E. Apple has filed this Notice of Removal within 30 days of its receipt of Plaintiff's Complaint, which was the first pleading received by Apple, through service or otherwise, setting forth the claims for relief upon which this action is based. This notice is therefore timely under 28 U.S.C. § 1446(b).

### IV.   THIS COURT HAS FEDERAL QUESTION JURISDICTION

9. This case is removable based on federal question jurisdiction. *See* 28 U.S.C. §§ 1331, 1441, 1446. Whether or not a plaintiff "cast[s] [its claims] in state law terms," *Sparta*, 159 F.3d at 1212, federal question jurisdiction lies where a federal issue is "(1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress," *Gunn v. Minton*, 568 U.S. 251, 258 (2013); *see also Easton v. Crossland Mortg. Corp.*, 114 F.3d 979, 982 (9th Cir. 1997). Thus, when "a plaintiff has 'artfully ple[d]'" claims under state law that nonetheless raise substantial, disputed federal questions, the court "may uphold removal

---

[3] One complaint (*Kolinsky v. Apple Inc.*, Case No. 2:24-cv-04232-JXN-LDW (D.N.J.)) was filed in federal court under the federal Class Action Fairness Act and purports to allege state sub-classes under state antitrust laws based on the same unilateral, monopolization conduct asserted in the DOJ Complaint. *See* RJN, Ex. 6 ¶¶ 29, 232–429. At this time, *Kolinksy* is the only other related case that does not purport to assert a cause of action under federal law.

even though no federal question appears on the face of the plaintiff's complaint." *Rivet v. Regions Bank of Louisiana*, 522 U.S. 470, 475 (1998). In other words, if the "state court necessarily must look to federal law in passing on the claim, the case is removable regardless of what is in the pleading." *Am. Mitac Corp. v. Fed. Ins. Co.*, 1994 WL 110384, at *2 (N.D. Cal. Mar. 29, 1994). Although Plaintiff tries to cloak his claims in California law causes of action—two claims under the Cartwright Act (Cal. Bus. & Prof. Code §§ 16700 & 16720), one under the Unfair Competition Law (Cal. Bus. & Prof. Code § 17200), and one for unjust enrichment under the common law—this case "implicate[s] significant federal issues" and therefore gives rise to federal question jurisdiction. *Grable*, 545 U.S. at 312.

**A.     Plaintiff's UCL Claim Necessarily Raises Federal Questions**

10.     From its very first paragraph, the Complaint makes clear that all of Plaintiff's claims are based on a theory of alleged unilateral, "monopolistic" conduct.

a. "Plaintiff now seeks in this suit to vindicate the interests of the millions of consumers who have overpaid for iPhones they purchased from Apple, missed out on the innovation and improved user experiences that competition would have made possible, and face ongoing harm unless this Court enjoins Apple's **monopolistic conduct** in the performance smartphone and smartphone markets." Compl. ¶ 1 (emphasis added).

b. "**[T]o protect its smartphone monopoly**—and the extraordinary profits that monopoly generates—Apple repeatedly chooses to make its products worse for consumers to prevent competition from emerging." *Id.* ¶ 11 (emphasis added).

c. "By **maintaining its monopoly** over smartphones, Apple is able to harm consumers in a wide variety of additional ways." *Id.* ¶ 12 (emphasis added).

d. "Apple . . . willingly sacrifices the short-term benefits it would gain from improved products and services developed by third parties when necessary **to maintain its monopoly**." *Id.* ¶ 41 (emphasis added).

e. "APPLE UNLAWFULLY **MAINTAINS ITS MONOPOLY** POWER." *Id.* at 21 (Heading VI) (emphasis added).

f. "Each step in Apple's course of conduct **built and reinforced the moat around its smartphone monopoly**. The cumulative effect of this course of conduct has been to **maintain and entrench Apple's smartphone monopoly** at the expense of the users, developers, and other third parties who helped make the iPhone what it is today." *Id.* ¶ 73 (emphases added).

g. "Apple's **monopoly maintenance** has taken many forms and continues to evolve today[.]" *Id.* ¶ 74 (emphasis added).

    h. "Apple **protects its smartphone monopoly** by degrading and undermining cross-platform messaging apps and rival smartphones." *Id.* at 29 (subheading B(1)).

    i. "Apple **protects its smartphone monopoly** by impeding the development of cross-platform smartwatches." *Id.* at 32 (subheading B(2)).

    j. "Apple **may use its smartphone monopoly playbook** to acquire or maintain power over next-frontier devices and technologies." *Id.* ¶ 156 (emphasis added).

    11.    Plaintiff does not identify any alleged anticompetitive concerted action, which, as explained further below, is required to pursue relief under California antitrust law. *See Beverage v. Apple, Inc.*, No. H050526, 2024 WL 1794410, at *5 (Cal. Ct. App. Apr. 25, 2024) (collecting cases). For example, the Complaint does not allege that Apple entered into an anticompetitive agreement with another entity to monopolize the smartphone or performance smartphone markets.

    12.    As a result, Plaintiff's UCL claim necessarily depends on federal antitrust law. To assert a UCL claim based on a defendant's business acts or practices, the plaintiff must establish that the practice is either "unlawful," "unfair," or "fraudulent." Cal. Bus. & Prof. Code § 17200. Plaintiff asserts Apple's conduct is both "unlawful" and "unfair" based on the Complaint's allegations of alleged unilateral monopolization. Compl. ¶¶ 227, 229. Removal is appropriate if either Plaintiff's unlawfulness or unfairness theory implicates a federal question, and each necessarily does here. *See Nat'l Credit*, 2004 WL 1888769, at *3 (case is removable where the complaint claims conduct is "unlawful" in violation of the UCL based on an alleged violation of federal antitrust law).

    13.    First, Plaintiff's unlawfulness theory necessarily implicates a federal question. While Plaintiff purports to base his UCL claim on his Cartwright Act claims, Compl. ¶¶ 229, the alleged unilateral, monopolization conduct he asserts cannot give rise to an actionable claim under California antitrust law because "single firm monopolization is not cognizable under the Cartwright Act." *Beverage*, 2024 WL 1794410, at *5 (quotation marks omitted). The Cartwright Act "contains no provision parallel to the Sherman Act's prohibition against monopolization" and therefore "applies only to a combination involving two or more persons, not to unilateral conduct." *Flagship*, 198 Cal. App. 4th at 1386 (quotation marks and citation omitted). And "a corporation cannot conspire with itself or its agents for purposes of the antitrust laws." *Beverage*, 2024 WL 1794410, at *5 (quotation marks omitted).

1  Thus, Plaintiff's Cartwright Act claims cannot serve as the basis for his UCL "unlawful" claim.  *See*
2  *Dimidowich*, 803 F.2d at 1478; *Beverage*, 2024 WL 1794410, at *5; *Asahi Kasei Pharma Corp. v.*
3  *CoTherix, Inc.*, 204 Cal. App. 4th 1, 8 (2012); *Nat'l Credit*, 2004 WL 1888769, at *4.  Nor can Plaintiff
4  rely on any other state's law.  *See, e.g.*, *Hilton v. Apple Inc.*, 2014 WL 10435005, at *3 (C.D. Cal. Apr.
5  18, 2014).  Consequently, Plaintiff's allegations regarding Apple's alleged unilateral, monopolistic
6  conduct are only actionable (if at all) under Section 2 of the federal Sherman Act.  *See Sunday Ticket*,
7  2016 WL 1192642, at *5; *Beverage*, 2024 WL 1794410, at *5.  Because Plaintiff must prove that Apple
8  violated federal antitrust law in order to establish a UCL violation under the "unlawful" prong, his UCL
9  claim based on that prong necessarily implicates a federal question.

10         14.    Second, Plaintiff's unfairness theory also necessarily implicates a federal question.
11  Because "[c]ourts may not simply impose their own notions of the day as to what is fair or unfair," an
12  "unfair" business practice under the UCL is generally limited to one that "threatens an incipient violation
13  of an antitrust law, or violates the policy or spirit of one of those laws because its effects are comparable
14  to or the same as a violation of the law, or otherwise significantly threatens or harms competition." *Cel-*
15  *Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 182, 187 (1999).  Consequently,
16  courts have held that claims based on uniteral, monopolistic conduct require "establish[ing] a violation
17  of federal antitrust law because no California statute deals expressly with monopolization or attempted
18  monopolization." *Rosenman*, 2021 WL 3829549, at *3–4 (quoting *Dimidowich*, 803 F.2d at 1478); *see*
19  *also Beverage*, 2024 WL 1794410, at *5, *8.  Courts reason that the absence of any applicable California
20  law means that they will be "require[d]" "to interpret and apply federal antitrust statutes, case law, and
21  policies in order to determine whether [the alleged] conduct constitutes unfair competition under the
22  UCL," which makes "the federal question . . . direct and essential" to the claim.  *Cent. Valley*, 2019 WL
23  2491328, at *3.  Because Plaintiff's unfairness claim "relies on a defendant's alleged abuse of its
24  monopoly position," it "requires establishing a violation of federal antitrust law" and thus also implicates
25  a federal question.  *Rosenman*, 2021 WL 3829549, at *4.

26         15.    Courts in the Ninth Circuit have long held that cases are removable where, as here, they
27  (a) are brought under the UCL's unfair or unlawful prongs, and (b) are premised on unilateral,
28  monopolistic conduct.  *See, e.g.*, *Rosenman*, 2021 WL 3829549, at *4; *Cent. Valley*, 2019 WL 2491328,

at *3; *Sunday Ticket*, 2016 WL 1192642, at *5; *Nat'l Credit*, 2004 WL 1888769, at *4. In particular, *Sunday Ticket* and *National Credit* are instructive here.

16. In *Sunday Ticket*, the plaintiff asserted multiple state law claims, including a UCL unfairness claim, premised solely on alleged unilateral, monopolistic conduct. *See* 2016 WL 1192642, at *1, *4. Defendants removed to federal court based on federal question jurisdiction, and the Court denied plaintiff's remand motion under the artful pleading doctrine. *Id.* at *1, *3–5. Because that plaintiff's UCL claim, like Plaintiff's claim here, relied solely on his "allegations regarding [d]efendants' monopolistic conduct"—and "no California statute deals expressly with monopolization"—the court concluded that the defendants' alleged "monopolistic conduct" necessarily raised federal questions because it was "only actionable under Section 2 of the Sherman Act." *Id.* *4–5 (quoting *Dimidowich*, 803 F.2d at 1478) (cleaned up).

17. Similarly, the defendants in *National Credit* removed a state court complaint that only asserted a UCL claim. *Nat'l Credit*, 2004 WL 1888769, at *1. Like this case, the complaint was "void of any allegations of an agreement or a conspiracy to act among defendants," and "the gravamen of plaintiff's complaint was that each defendant had unilaterally engaged in anticompetitive conduct to maintain or augment its monopoly." *Id.* at *3. Accordingly, the court concluded that plaintiff's UCL claim for "unlawful" conduct required resolution of questions of federal law and denied plaintiff's motion for remand. *Id.* at *3–5. It did not matter that plaintiff had alleged defendants' conduct violated "state and federal antitrust laws" because "California's antitrust laws do not address . . . unilateral monopolization conduct." *Id.* at *1, *3 (citing *Dimidowich*, 803 F.2d at 1478).

18. In short, because the only conduct upon which Plaintiff's UCL claim could possibly be based is Apple's alleged unilateral, monopolistic conduct, the "real nature" of Plaintiff's UCL claim is federal, regardless of his attempts to artfully plead it in state-law terms. *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 397 n.2 (1981); *see also Sparta*, 159 F.3d at 1212.

**B.     The Federal Questions Are Actually Disputed**

19. Apple disputes all of Plaintiff's claims, including any assertion that Apple engaged in anticompetitive monopolistic conduct of any kind. Apple intends to vigorously defend itself in this case (and in all of the federal cases, including the Government's case, concerning these exact same issues)

and will demonstrate that the claims against it lack factual or legal merit. Thus, the federal questions raised by Plaintiff's UCL claim are "actually disputed." *See, e.g.*, *Rosenman*, 2021 WL 3829549, at *6 (finding issue was actually disputed where defendant "denie[d] all of [plaintiff's] claims"); *Sunday Ticket*, 2016 WL 1192642, at *6 (same).

### C. The Federal Questions Are Substantial

20. The federal questions implicated by Plaintiff's UCL claim are substantial. The Supreme Court has explained that the "substantiality inquiry" turns on "the importance of the issue to the federal system as a whole." *Gunn*, 568 U.S. at 260. Both the Supreme Court and the Ninth Circuit "have emphasized the importance of the Sherman Act to the federal system." *Rosenman*, 2021 WL 3829549, at *6. Specifically, the Supreme Court has explained that "[t]he federal interest in enforcing the national policy in favor of competition is both familiar and substantial," *California Retail Liquor Dealers, Ass'n v. Midcal Aluminum, Inc.*, 445 U.S. 97, 110 (1980), and the Ninth Circuit has similarly noted that "[t]he federal interest embodied in the Sherman Act is well-recognized and substantial," *Miller v. Hedlund*, 813 F.2d 1344, 1352 (9th Cir. 1987). Because Plaintiff's allegations of uniliteral, monopolistic conduct implicate the federal policy embodied in Section 2 of the Sherman Act, they raise "substantial" federal questions within the meaning of *Gunn*. *See, e.g.*, *Rosenman*, 2021 WL 3829549, at *6 (federal issues were substantial because they implicated the Sherman Act); *Sunday Ticket*, 2016 WL 1192642, at *6 (same).

### D. The Federal Questions Can Be Resolved in Federal Court Without Disrupting the Federal-State Balance Approved by Congress

21. Removal would not disturb "the appropriate balance of federal and state judicial responsibilities." *Gunn*, 568 U.S. at 264 (quotation marks omitted). Federal courts have exclusive jurisdiction over federal antitrust claims. *Marrese v. Am. Acad. of Orthopaedic Surgeons*, 470 U.S. 373, 379 (1985); *Eichman v. Fotomat Corp.*, 759 F.2d 1434, 1437 (9th Cir. 1985); 15 U.S.C. §§ 4, 15. Thus, Congress has determined that federal courts, not state courts, should decide federal antitrust claims. *Rosenman*, 2021 WL 3829549, at *6.

22. Here, Plaintiff's allegations of unilateral, monopolistic conduct necessarily raise disputed, substantial federal questions—namely, questions concerning federal antitrust law. *See supra*

Part IV.A.  Thus, the Court may take this case "without disturbing the congressionally approved balance of federal and state judicial responsibilities." *Rosenman*, 2021 WL 3829549, at *6; *see also, e.g.*, *Sunday Ticket*, 2016 WL 1192642, at *7.

### V.     REMOVAL TO THIS COURT IS PROPER

23.     Based on the foregoing facts and allegations, this Court has jurisdiction over this action under 28 U.S.C. § 1331, which gives federal district courts original jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States."  28 U.S.C. § 1331; *see also* 15 U.S.C. § 15.  The Court can exercise supplemental jurisdiction over Plaintiff's claims to the extent they arise under state law because they are based on the exact same conduct and therefore arise from "the same case or controversy" as Plaintiff's claims giving rise to federal question jurisdiction.  28 U.S.C. § 1367; *see also, e.g.*, *County of Santa Clara v. Astra USA, Inc.*, 401 F. Supp. 2d 1022, 1025 (N.D. Cal. 2005).

24.     Accordingly, this case is properly removable under 28 U.S.C. §§ 1441, 1446.

25.     The United States District Court for Northern District of California is the federal judicial district in which the Santa Clara County Superior Court sits.  This action was originally filed in Santa Clara County Superior Court, rendering venue in this federal judicial district proper for purposes of removal.  28 U.S.C. § 84(a); *see also* 28 U.S.C. § 1441(a); N.D. Cal. L.R. 3-2.

26.     In accordance with 28 U.S.C. § 1446(a), true and correct copies of the (a) Summons, (b) Civil Case Cover Sheet, (c) Class Action Complaint, (d) Order Deeming Case Complex and Staying Discovery and Responsive Pleading Deadline, (e) Proof of Service of Summons, (f) Defendant's Notice of Posting Complex Fee and First Appearance, and (g) Proof of Service of Order Deeming Case Complex and Staying Discovery and Responsive Pleading Deadline are attached as Exhibits A–G to the Declaration of Daniel G. Swanson, filed concurrently herewith.  These filings constitute the complete record of all filings and proceedings in the state court.

27.     Upon filing the Notice of Removal, Apple will furnish written notice to Plaintiff's counsel, and will file and serve a copy of this Notice with the Clerk of the Santa Clara County Superior Court, in accordance with 28 U.S.C. § 1446(d).

28.     By removing this action to this Court, Apple does not waive any rights.

| | |
|---|---|
| DATED: May 6, 2024 | Respectfully submitted, |
| | GIBSON, DUNN & CRUTCHER LLP |
| | By: */s/ Daniel G. Swanson* |
| | Daniel G. Swanson |
| | Attorneys for Defendant Apple Inc. |